**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

CHRISTIAN ROBERT KOMOR,
Plaintiff, appearing pro se,

v.

CIPHER DIGITAL INC.,
Defendant.

Case No. 26 CV 10112

**COMPLAINT FOR DAMAGES**
**AND INJUNCTIVE RELIEF**
**Personal injury: negligence**
**Demand: $100,000, plus allowable costs**
**Jury Trial Demanded**

## I. INTRODUCTION

1. Plaintiff Christian Robert Komor brings this civil action against Defendant Cipher Digital Inc. to obtain injunctive relief and compensatory damages for severe, continuous, and aggravated bodily injury, pulmonary distress, and substantial impairment of health caused by Defendant's unlawful, excessive, and unmitigated industrial operations and local airborne emissions.

2. The challenged conduct concerns Cipher Digital Inc.'s own role in Black Pearl at Near Wink, Winkler County, Texas. Cipher's annual report places Black Pearl near Wink in Winkler County, Texas and describes the transition from bitcoin mining to a turnkey HPC development. The filing gives June and July 2025 in different sections for the mining start and says mining ceased in February 2026. Its August 4, 2026 update then reports initial HPC delivery at the beginning of August and rent commencement, while additional Phase I halls and Phase II construction remained underway. The challenged activities are limited to Defendant's own project decisions and conduct within its actual authority or control; another participant's acts are not attributed to Defendant merely because of a shared project. References below to emissions, breach and injury causation are limited to actual conduct and releases attributable to Defendant during its supported period of participation; neither future expansion nor companywide figures are treated as completed site operations.[1]

3. Plaintiff alleges negligent and unreasonable acts and omissions concerning emissions controls, heat rejection and air-quality mitigation in Defendant's own actual project activities. Plaintiff alleges that attributable greenhouse-gas releases contribute to environmental warming and the downstream smoke, ozone and airborne-allergen exposures that aggravate his physical health burden. The allegation of direct local pollutant or thermal-plume exposure from the selected project requires project-specific evidence; it is not inferred solely from a project's power capacity or location. Plaintiff alleges that progressive carbon accumulation and reinforcing environmental feedbacks threaten his physical survival.[2]

---

[1] Inside the Extinction Envelope. DOI: 10.31223/X5H214.

[2] How Climate Change Impacts Humans. DOI: 10.5281/zenodo.23428939.

4. Plaintiff alleges that actual emissions and environmental effects attributable to Defendant's own conduct have aggravated his pulmonary, respiratory and immune-system conditions, resulting in recurring acute health crises, physical suffering and medical expenses. The proposed abatement measures are sought only to the extent they are technically feasible and within Defendant's authority or control. Plaintiff seeks an enforceable, site-specific injunction or negotiated consent decree requiring Cipher Digital Inc. to deploy the existing technology of Direct Atmospheric Carbon Removal (DACR) which will utilize waste heat recovered from the covered HSDC activities within Defendant's control through a separately engineered heat pump, with independent additional liquid coolant obtained during the process of DACR. Plaintiff notes that recovered-carbon (R-$CO_2$) can be formed into many salable environmentally friendly products such as concrete building materials and polymers employing hundreds of workers (unlike HSDC) and over-compensating for capitol outlay to build dedicated clean-power generation, storage, and interconnection infrastructure to serve the HSCD-DACR-R-CO2 campus. [3]

5. Finally, the requested relief also includes $100,000 in compensatory damages for Plaintiff's physical injuries to date.

## II. PARTIES, JURISDICTION, AND VENUE

6. Plaintiff is a natural person residing in the Grand Junction, Colorado, area since 2019 and appearing pro se. Plaintiff is a citizen of the United States and is domiciled in Colorado, his permanent home, where he intends to remain or return.

7. Plaintiff sues in his individual capacity for his own physical injury; the Climate Deadline Foundation is not a party.

8. Defendant Cipher Digital Inc. is identified in the cited public records. Its published company/contact address is 1 Vanderbilt Avenue, Floor 54, New York, NY, 10017. The cited corporate record identifies incorporation in Delaware. On information and belief, based on

---

[3] Anthropogenic Climate Forcing (Possibilities of Immediate Action). DOI: 10.5281/zenodo.23428944. Recovered Data-Centre Heat and Direct Air Capture. DOI: 10.31223/X5VR5N.

the headquarters and principal-office materials, its principal place of business is in New York; that inference concerns the place of direction and control, not a maildrop.[4]

9. Plaintiff invokes subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Plaintiff is a United States citizen domiciled in Colorado and therefore a citizen of Colorado. Cipher Digital Inc. is incorporated in Delaware and, on information and belief, has its principal place of business in New York; it is therefore a citizen of Delaware and New York. Complete diversity is alleged between these parties. Plaintiff demands $100,000 in compensatory damages for the physical injury alleged here, exceeding $75,000 exclusive of interest and costs, together with the requested prospective relief.[5]

10. This Court has general personal jurisdiction over Cipher Digital Inc. because, on information and belief, its headquarters and principal place of business are in New York, New York, within this District, making it at home in the forum State. This allegation is based on the cited company headquarters materials and corporate records, not solely on a correspondence or registered-agent address. Personal jurisdiction is invoked under Federal Rule of Civil Procedure 4(k)(1)(A), subject to the forum State's jurisdictional law and constitutional due process.[6]

---

[4] Federal subject-matter jurisdiction remains to be completed. 28 U.S.C. § 1331: https://www.law.cornell.edu/uscode/text/28/1331 Additional identity/incorporation records: https://www.sec.gov/Archives/edgar/data/0001819989/000181998926000050/cifr-20260930.htm Company identity/address publications: https://investors.cipherdigital.com/node/11786/ixbrl-viewer ; https://cipherdigital.com/contact/

[5] 28 U.S.C. § 1332(a)(1) and (c)(1), diversity jurisdiction, amount in controversy and corporate citizenship: https://www.law.cornell.edu/uscode/text/28/1332 . St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–289 (1938), good-faith demand and legal-certainty standard: https://www.law.cornell.edu/supremecourt/text/303/283

[6] Personal-jurisdiction framework: Federal Rule of Civil Procedure 4(k)(1)(A), https://www.law.cornell.edu/rules/frcp/rule_4; Daimler AG v. Bauman, 571 U.S. 117 (2014), https://www.law.cornell.edu/supremecourt/text/11-965; corporate nerve-center distinction, Hertz Corp. v. Friend, 559 U.S. 77 (2010), https://www.law.cornell.edu/supct/html/08-1107.ZS.html. Company/office sources: https://www.sec.gov/Archives/edgar/data/0001819989/000181998926000050/cifr-20260930.htm ; https://investors.cipherdigital.com/node/11786/ixbrl-viewer ; https://cipherdigital.com/contact/

11. Plaintiff invokes this Court's diversity or alienage jurisdiction, as described in paragraph 9, over his common-law negligence claim and requests adjudication of the physical injury alleged in this Complaint and related prospective relief.[7]

12. Plaintiff invokes venue under 28 U.S.C. § 1391(b)(1) in the Southern District of New York. This action names a single defendant, Cipher Digital Inc.; on the headquarters and jurisdictional facts alleged above, Defendant resides in this District for this action within the meaning of § 1391(c)(2), subject to § 1391(d) for a corporation in a State with multiple districts. The selected project at Near Wink, Winkler County, Texas is not alleged to be physically in this District merely because the headquarters is here. Venue is not predicated solely on the clerk's mailing address.[8]

13. Plaintiff asserts common-law negligence arising from Cipher Digital Inc.'s own challenged conduct concerning Black Pearl at Near Wink, Winkler County, Texas and the resulting physical injury in Colorado. Under Klaxon, a federal court sitting in diversity applies the choice-of-law rules of its forum State. Plaintiff proposes Colorado negligence law because the claimed respiratory injury and its aggravation occurred in Colorado. Alternatively, under Rule 8(d)(2), Plaintiff pleads negligence under the law of the State in which the particular challenged conduct occurred if the forum's conflicts rules select that law. This alternative pleading does not assume that any State's law has already been determined controlling.[9]

## III. FACTUAL ALLEGATIONS

### A. Defendant's Project Role, Operations, and Disclosures

14. The selected project is Black Pearl, at Near Wink, Winkler County, Texas. Cipher's annual report places Black Pearl near Wink in Winkler County, Texas and describes the transition

---

[7] 28 U.S.C. § 1332, https://www.law.cornell.edu/uscode/text/28/1332; Federal Rule of Civil Procedure 7.1(a)(2), https://www.law.cornell.edu/rules/frcp/rule_7.1; unincorporated-entity citizenship, Siloam Springs Hotel, L.L.C. v. Century Surety Co., https://www.ca10.uscourts.gov/sites/ca10/files/opinions/01019407580.pdf. Case-specific corporate records: https://www.sec.gov/Archives/edgar/data/0001819989/000181998926000050/cifr-20260930.htm

[8] 28 U.S.C. § 1391, venue: https://www.law.cornell.edu/uscode/text/28/1391

[9] Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487 (1941), https://www.law.cornell.edu/supremecourt/text/313/487; alternative pleading, Federal Rule of Civil Procedure 8(d)(2), https://www.law.cornell.edu/rules/frcp/rule_8. Proposed Colorado negligence framework: Colorado Supreme Court civil jury instructions, Chapter 9, https://www.coloradojudicial.gov/sites/default/files/2026-02/Chapter%209.pdf. The forum's conflicts rules, rather than an assumed nationwide negligence rule, determine the governing law.

from bitcoin mining to a turnkey HPC development. The filing gives June and July 2025 in different sections for the mining start and says mining ceased in February 2026. Its August 4, 2026 update then reports initial HPC delivery at the beginning of August and rent commencement, while additional Phase I halls and Phase II construction remained underway.[10]

15. Cipher describes itself as developing Black Pearl and delivering capacity to its hyperscale tenant. The annual report identifies Amazon Web Services, Inc. as Black Pearl's tenant; Fluidstack leases elsewhere in Cipher's portfolio should not be substituted for this selected site. Initial tenant delivery does not establish completion of the entire campus. The challenged activities are limited to Defendant's own project decisions and conduct within its actual authority or control; another participant's acts are not attributed to Defendant merely because of a shared project.[11]

16. The project identification below defines the "Covered Facilities" for this Complaint, limited to the identified premises and Defendant's actual activities concerning them:

a. Project: Black Pearl.

b. Location: Near Wink, Winkler County, Texas.

c. Scope: the portions and activities of the identified project that Defendant actually undertook or directed in its disclosed role. No unverified parcel, permit number, subsidiary or additional building is included.[12]

17. The annual report identifies Cipher Black Pearl LLC as a wholly owned subsidiary involved in the Black Pearl land arrangements and as counterparty to a fifteen-year Amazon Web Services, Inc. lease signed in October 2025. The filing describes both land-lease and

---

[10] Project/company publications, cited for the disclosures stated in the text: https://investors.cipherdigital.com/static-files/1bc6dff3-f391-40d8-b43a-0c26c6503e15 ; https://investors.cipherdigital.com/news-releases/news-release-details/cipher-digital-provides-second-quarter-2026-business-update/

[11] Project/company publications, cited for the disclosures stated in the text: https://investors.cipherdigital.com/static-files/1bc6dff3-f391-40d8-b43a-0c26c6503e15 ; https://investors.cipherdigital.com/news-releases/news-release-details/cipher-digital-provides-second-quarter-2026-business-update/

[12] Project/company publications, cited for the disclosures stated in the text: https://investors.cipherdigital.com/static-files/1bc6dff3-f391-40d8-b43a-0c26c6503e15 ; https://investors.cipherdigital.com/news-releases/news-release-details/cipher-digital-provides-second-quarter-2026-business-update/

subsidiary-landownership provisions; an exact parcel and current title determination is not supplied by this summary.[13]

18. The reviewed materials do not establish a site-specific annual electricity-consumption total or an annual percentage increase for the Covered Facilities. Announced power capacity, future load and corporate energy totals are not substituted for measured site consumption.[14]

19. No project-specific annual greenhouse-gas inventory or admission that this project exceeded a legal emissions limit has been established in the reviewed materials. Plaintiff's allegations are not based on an invented emissions total or a copied disclosure from another company.

20. Plaintiff alleges that actual releases attributable to Defendant's activities concerning the Covered Facilities contribute to atmospheric accumulation, environmental warming and regional respiratory hazards. The selected project's location, operating status and Defendant's actual role limit that allegation; a measured site-specific discharge is not inferred from an announcement, design capacity or companywide inventory.

21. The reviewed project materials do not establish a project-specific carbon-removal pledge or completed deployment of heat-recovery and emissions-abatement systems. Plaintiff proposes those technologies for evaluation as relief; their technical feasibility and Defendant's authority to implement them remain project-specific matters.

22. On information and belief, Plaintiff challenges Cipher Digital Inc.'s own design, development, computing, procurement or emissions-management decisions to the extent actually undertaken or directed in its disclosed role. No undisclosed subsidiary relationship or authority over another project participant is presumed.

23. Plaintiff alleges that actual and avoidable atmospheric releases attributable to Defendant's conduct contribute to environmental conditions that aggravate respiratory illness. That is Plaintiff's causation allegation, not a measured allocation of his injury to a particular source, nor a claim that a proposed facility was already emitting.

---

[13] Project/company publications, cited for the disclosures stated in the text: https://investors.cipherdigital.com/static-files/1bc6dff3-f391-40d8-b43a-0c26c6503e15

[14] Project/company publications, cited for the disclosures stated in the text: https://investors.cipherdigital.com/static-files/1bc6dff3-f391-40d8-b43a-0c26c6503e15 ; https://investors.cipherdigital.com/news-releases/news-release-details/cipher-digital-provides-second-quarter-2026-business-update/

**B. Plaintiff's Physical Injuries and Medical Harm**

24. At all times relevant to this action, Plaintiff Christian Robert Komor has suffered from pre-existing, clinical pulmonary vulnerabilities, including reactive airway disease, severe asthma, and hyper-reactive immune-system sensitivities.

25. Between 2019 and 2026, Plaintiff suffered severe, progressive, and debilitating aggravation of his pre-existing pulmonary and immune conditions as a direct, foreseeable, and proximate result of the atmospheric degradation, ozone precursor enrichment, and fine particulate loading generated and contributed to by Defendant's unmitigated operations.

26. Defendant's emissions repeatedly triggered acute, life-threatening bronchospasms, severe airway inflammation, and acute dyspnea, resulting in:

a. Multiple emergency hospital admissions and urgent clinical interventions;

b. Continuous, specialized treatment under the ongoing care of a panel of four board-certified clinical immunologists and pulmonologists;

c. High-dose oral and inhaled corticosteroid regimens and emergency bronchodilator therapy; and

d. Episodes of acute oxygen desaturation and physical collapse following ambient outdoor exposure.

27. As an illustrative example of this recurring impairment, routine outdoor physical exertion routinely induced debilitating respiratory distress, rendering Plaintiff physically incapacitated, struggling severely for breath, and unable to sustain ordinary outdoor movement or employment tasks.

28. As a direct and proximate result of Defendant's ongoing private nuisance and negligent acts and omissions, Plaintiff has suffered concrete, substantial bodily injuries, intense physical pain and mental suffering, substantial out-of-pocket medical expenses, loss of occupational and physical capacity, and severe deprivation of the ordinary physical comfort and peaceful enjoyment of life.

**C. Foreseeability of Regional Atmospheric Harm and Induced Respiratory Injury**

29. At all times relevant to this action, the causal relationship between expanding industrial greenhouse-gas emissions, localized ambient air warming, and the severe aggravation of

chronic human respiratory illness was widely established, scientifically verified, and known to Defendant Cipher Digital Inc..

30. Well-established scientific consensus, including published findings of the Intergovernmental Panel on Climate Change ("IPCC"), confirms that atmospheric greenhouse-gas accumulation drives compound regional environmental hazards—specifically lengthening wildfire fire seasons, increasing ambient ground-level ozone formation, and escalating particulate air pollution.

31. Peer-reviewed atmospheric and epidemiological research has established that:

a. Anthropogenic warming has nearly doubled the forest area burned by regional wildfires across the Western United States, generating pervasive and dense plumes of fine particulate matter (PM2.5);

b. Regional warming accelerates atmospheric photochemical reactions, systematically increasing ambient ground-level ozone concentrations during peak operating seasons; and

c. Regional climate shifts have lengthened North American airborne pollen seasons by approximately twenty days while significantly increasing aeroallergen concentrations.

32. Fine particulate matter (PM2.5), elevated ground-level ozone, and concentrated thermal exhaust plumes represent potent, acute pulmonary irritants that foreseeably induce severe bronchospasms, cellular lung inflammation, and disabling exacerbations in individuals with pre-existing reactive airway disease and allergic vulnerabilities.

33. Plaintiff alleges that a reasonable participant in Defendant's disclosed project role would consider the respiratory and environmental hazards described above. The reviewed materials do not establish a company-specific admission of responsibility for Plaintiff's injury.

34. Plaintiff alleges that Defendant failed to take reasonable precautions against avoidable atmospheric harm within the activities it actually undertook or directed. This allegation is limited by the disclosed project status and does not assert completed operations before the supported operating period or assume that proposed mitigation was technically available at every date.

35. It was entirely foreseeable to a reasonable operator in Defendant's position that adding massive, unscrubbed thermal plumes and combustion byproducts to an already stressed

regional airshed would compound ambient particulate and ozone hazards, directly resulting in acute respiratory crises for vulnerable individuals residing in the downwind impact zone, including Plaintiff.

36. **(a) Point of Agency Loss.** Plaintiff alleges that the Point of Agency Loss (POAL) can now be estimated mathematically. POAL denotes the point of no further effective human actionability: the threshold beyond which even a fully deployed portfolio of First Tier Interventions (FTI), including Direct Atmospheric Carbon Removal (DACR), can no longer arrest the climate–ecological degradation and extinction process.

**(b) Mathematical formulation.** Let $U(t)$ be the set of feasible interventions that remain capable of averting the specified cascade at time $t$. The threshold is defined as follows:

$$\boxed{t_{\mathrm{POAL}} = \inf\{t \geq 0 \colon U(t) = \emptyset\}}$$

This defines $t_{\mathrm{POAL}}$ as the earliest time at which no effective, feasible intervention remains. If that set never becomes empty, then $t_{\mathrm{POAL}} = +\infty$.

**(c) First Tier Interventions.** FTI include the relief sought in this Complaint: DACR integrated with hyperscale data centers (HSDC) and uses for recovered carbon dioxide (R-$CO_2$). The complementary interventions are methane suppression; ocean alkalinity enhancement (OAE); stratospheric aerosol injection (SAI); and coral resilience and marine conservation. A clean-energy foundation supports the entire portfolio.

**(d) Projected limits and urgency.** Plaintiff's first-order intervention-portfolio assessment assigns a 15–20% prospect of avoiding POAL under its best-effort deployment assumptions, combining estimated physical potential with deployment readiness. This assumption-dependent diagnostic assessment is developed in Plaintiff's Extinction Envelope analysis. It underscores Plaintiff's allegation that delay compounds the danger. The relief sought here is directed to Cipher Digital Inc.'s covered activities and the site-specific emissions-control and carbon-removal measures set out in the Prayer for Relief.[15]

---

[15] Portfolio estimate: Komor, Inside the Extinction Envelope, intervention-portfolio assessment and "Limits and disclosure," https://doi.org/10.31223/X5H214 . Independent tipping-point context, not the source of the 15–20% estimate: Armstrong McKay et al. (2022), Exceeding 1.5°C global warming could trigger multiple climate tipping points, Science 377, eabn7950, https://doi.org/10.1126/science.abn7950

**A model average is not a safety guarantee**

37. The historical sea-ice comparison examined in Plaintiff's Least Drama manuscript found a September Arctic decline of 7.8 ± 0.6% per decade during 1953–2006, against an AR4 multi-model mean of 2.5 ± 0.2% per decade, approximately a threefold discrepancy.[16]

38. That documented discrepancy and the risks of interacting feedbacks require consideration of credible severe outcomes in assessing continued emissions; a central projection is not a ceiling on potential harm.

**IV. FIRST CLAIM FOR RELIEF (Negligence / Gross Negligence)**

39. Plaintiff incorporates by reference paragraphs 1 through 38 as though fully set forth herein.

40. Plaintiff alleges that Cipher Digital Inc., in undertaking its own affirmative design, engineering, construction, computing, power-procurement or operating activities concerning Black Pearl at Near Wink, Winkler County, Texas, owed reasonable care against creating foreseeable risks of physical injury. This asserted duty is limited to Defendant's actual role and control, not another participant's conduct.

41. The scope of Defendant's duty is governed by standard common-law principles of reasonable care, defined by the high foreseeability of severe respiratory injury resulting from concentrated particulate and thermal atmospheric loading, the known availability of industrial mitigation technologies, and the gravity of the resulting bodily harm.

42. Defendant possessed actual and constructive knowledge that expanding its computing operations without on-site emissions scrubbing or closed-loop thermal recapture would foreseeably degrade ambient air quality and trigger acute, disabling respiratory exacerbations in individuals with pre-existing pulmonary vulnerabilities.

43. Defendant breached its duty of reasonable care by:

a. Operating stationary generation and high-density computing loads with avoidable atmospheric discharges;

[16] Komor, Erring on the Side of Least Drama: Evaluating Claims of Conservative Bias in Climate Risk Assessment. DOI: https://doi.org/10.5281/zenodo.23428086 . Repository: https://zenodo.org/records/23428086 Stroeve, J., Holland, M. M., Meier, W., Scambos, T., and Serreze, M. (2007), Arctic sea ice decline: Faster than forecast, Geophysical Research Letters 34, L09501, DOI: https://doi.org/10.1029/2007GL029703 . Historical simulation comparison: https://onlinelibrary.wiley.com/doi/abs/10.1029/2007GL029703

b. Discharging unmitigated thermal exhaust plumes directly into the regional airshed rather than deploying available closed-loop heat-recovery systems;

c. Failing to implement carbon-aware computational throttling during periods of elevated atmospheric stress and high ambient particulate concentrations; and

d. Prioritizing capital cost externalization over available point-source emissions-abatement interfaces.

44. Defendant's breaches were committed willfully, knowingly, or with gross negligence and conscious disregard for the health and physical well-being of downwind residents and vulnerable individuals.

45. As a direct, foreseeable, and proximate result of Defendant's breaches, Plaintiff suffered acute, severe, and repeated physical aggravation of his chronic asthma and immune-system illnesses, requiring emergency medical interventions, extensive specialist treatment, physical suffering, and substantial economic damage.

**V. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Christian Robert Komor respectfully requests that this Court enter judgment in his favor and against Defendant Cipher Digital Inc., and grant the following relief:

A. An award of compensatory damages in the amount of $100,000 for bodily injury, medical expenses, physical pain, and noneconomic harm incurred to date;

B. Entry of a preliminary and permanent injunction ordering Defendant Cipher Digital Inc. to abate proven ongoing or sufficiently imminent atmospheric hazards attributable to its own activities concerning Black Pearl at Near Wink, Winkler County, Texas, to the extent of Defendant's authority or control, by:

1. Submitting, within ninety (90) days of the Court's order, a certified engineering audit of all direct and operational emissions, recoverable waste heat, and cooling-system discharges at the covered facilities;

2. Submitting, within one hundred eighty (180) days, an enforceable compliance plan to eliminate unmitigated atmospheric venting through the installation of closed-loop waste-heat recovery, mechanical heat pumps, and verifiable point-source emissions-abatement interfaces; and

3. Achieving full operational compliance with all verified abatement requirements within twenty-four (24) months of the entry of the Court's decree;

C. In the alternative, entry of an enforceable, court-supervised Consent Decree embodying equivalent mandatory emissions-abatement, heat-recapture, and verifiable net-removal milestones;

D. An award of allowable filing fees, statutory interest, and taxable court costs; and

E. Such other and further legal or equitable relief as this Court deems just and proper.

**VI. JURY DEMAND**

Plaintiff Christian Robert Komor hereby demands a trial by jury on all issues and claims so triable as a matter of right.

Respectfully submitted,

Dated: 14-09-2026

Signature: ______________________

Christian Robert Komor, Plaintiff pro se
246 Hollyberry Way
Fruita, CO 81521
Telephone: 800-884-0824
christiankomor@k4gov.com

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

UNITED STATES POSTAL SERVICE. Retail

P

US POSTAGE PAID
$13.90
Origin: 81501
11/10/26
0738340501-55

PRIORITY MAIL®

0 Lb 7.30 Oz
RDC 01

EXPECTED DELIVERY DAY: 11/16/26

C099

SHIP TO:
500 PEARL ST
NEW YORK NY 10007-1316

USPS TRACKING® #

9505 5110 5762 6314 4749 80

PRIORITY® MAIL

...trictions apply).*
...many international destinations.
...orm is required.
...ns exclusions see the
...ty and limitations of coverage.

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

PAPER POUCH how2recycle.info

OD: 12 1/2 x 9 1/2

Christian R. Komor
Christian R. Komor
246 Hollyberry Way
Fruita, CO 81521

USM P3 SDNY

FILED
U.S. DISTRICT COURT
2026 NOV 17 PM 2:14
S.D. OF N.Y.

TO:

Pro Se Intake Unit
U.S. District Court
Southern District of New York
500 Pearl Street
Room 205
New York, NY 10007

This package is made from post-consumer waste. Please recycle - again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.